Duncan, J.
delivered the opinion of the Court.
The respondents, by their act of incorporation, are empow *473 ered to make such laws, rules, and orders as shall appear to them necessary for the government of the corporation, its officers. estates, property, and their business and affairs in general. Ever since the King v. Richardson, 1 Burr. 517, it has been considered as completely established, that the power °f amotion is incident to a corporation. There is a tacit condition annexed to this franchise, which, if the member break, he may be disfranchised ; and where the offence is merely against his duty as a corporator, he can be tried only for it by the corporation. Unless this power Wfre incident to the corporation, offices might be forfeited for offences, and yet there would be no means to carry the law into execution. The offences for which a corporate officer may be removed, have been divided into three classes: 1st. Such as relate to his corporate or official character, amounting to breaches of|the condition tacitly or expressly annexed to his office. 2d. Such as have no immediate relation to his official character, but are, in themselves, of so infamous a nature, as to render him unfit to enjoy any public office: And 3d. Offences of a mixed nature, being not only against his corporate or official duty, but indictable at common law. The specific charges against the relator would fall into the first class. . The mere misemployment of money is no cause for amotion, Rex v. Chalke, 1 Ld. Raym. 226 ; but the charges here are of a very different nature; charging the corporation with money he never had paid, which is clearly a good cause of disfranchisement, The King v. Mayor of Doncaster, &c. 2 Ld. Raym. 1566. The charges specified would amount to such official misconduct as would justify the removal of the relator. But there are many objections to the course pursued. These respectable gentlemen have, with all fairness, detailed the mode of conviction and expulsion, and without the imputation of any improper design, of which there is not the slightest evidence, they certainly have fallen into palpable mistake and error. The 13th article of their bye-laws prescribes the manner in which this power of amotion is to be exercised: u No member to be expelled by a less number than two-thirds of the members present, the vote to be by ballot; no expulsion shall take place without giving the accused previous notice in writing to attend the board, and answer the charges preferred against him, a copy of which shall be transmitted to him at least six days before the time appointed for the hearing.” *474 On Wednesday, the 5th January last, the complaint against Mr. Roberts was first officially laid before the board, when ,a comm¡ttee was appointed, by ballot, to examine his accounts, visit the paupers on his list, and ascertain if he admitted any contrary to the orders of the board. The time when the first order was taken did not conform to their bye-laws; for by the first article it is provided, that the stated meetings on Friday evenings shall be exclusively appropriated for the consideration of unfinished business, and no papers or new business shall be introduced, unless by consent of two-thirds of the members present. Non constat here, that this new business wasjntroduced by the consent of two-thirds. But waving this irregularity, and admitting it to be cured by the subsequent appearance and defence-of the accused. On Tuesday, the 9th nothing material occurred. On Tuesday, the 16th, the committee reported on his accounts, and specified twenty-six instances of improper charges. A copy of the matters alleged against him, was ordered to be furnished him by the secretary; and on the 19th, the copy was served. On Tuesday, the 23d, time was given to Roberts to make his defence, and a special meeting directed to be held on Wednesday, Ú\e 31st; notice was given to all the members to attend on that day. The meeting was convened ; Roberts heard in his defence ; and, thereupon, it was “ Resolved, that Mr. Roberts had violated his duty as a guardian of the poor;” yeas twenty-two, nays twelve. Here this proceeding should have stopped ; for this amounted to an acquittal, there not being the requisite mar jority to convict. If the specification is to be compared toan indictment, this was equal to a bill returned by a grand jury, ignoramus ; if to a final trial, then he was finally acquitted. But it bears a stronger resemblance to, and cannot be distinguished from, the impeachment of public officers under the Constitution of the United States and of this State, which require the concurrence of two-thirds of the members present. There nipt being a constitutional majority to convict, and the vote being taken on the whole specification, it became the duty of the board to pronounce, that Sylvester Roberts was acquitted of the charges exhibited against him. Judge Chase’s Trial, 268. But a different course was taken repugnant to their own bye-law, to the Constitution, and every principle of natural justice ; for on the 6th February following, the business is again resumed, and the board resolve, “that Sylvester *475 Roberts be expelled in consequence of a violation of his duties as guardian of the poor.” Yeas 27, Nays 8. There was no new charge, no new specification; agreeably to the specifir , . ‘ , • r i , - cations preferred against him, no hearing of the cause de novo, no new' defence, nor was the accused called on to make one. Thus was he twice put in jeopardy for the same offences; condemned after he had been acquitted, and sentenced to expulsion for offences of which he had been acquitted. It is very evidentthatnewmembers attended andpronouncedsentence, who' had neither heard the evidence to supportthe charges, nor the defence of the accused, and whose votes produced a conviclion. The accused was not apprised that he was again to be put on his trial. An opportunity might have been taken of a-thin meeting, when his friends were absent, who would, perhaps, have been present had any notice been given of an intention to renew the inquiry. His enemies might have been notified, and attended with all their force, while his friends remained in total ignorance of so extraordinary and unprecedented a procedure. I do not impute intentional misconduct to the respectable board ; I only speak of the consequences that would naturally result; the opportunity that it would afford to intrigue, to remove an obnoxious member ; for if he was again subject to a trial, there would be no end to the pursuit; and if they had not obtained a majority of two-thirds on this second trial, I do not see what was to prevent a third, or any number his enemies might choose, until their efforts-were finally successful. The course taken is open to much observation. Fairness and the justice due to all men would have required, if he had been legally subject to a future trial, that, as he had been acquitted of every violation of duty, at an assembly to which all the members of the corporation had been summoned, and a reconsideration was to take place, that all should have had an opportunity of attending and of voting. If they had, the result might have- been different. This man had a vested right to his office, of which he could not be divested but by the judgment of his peers, or the law of the land. It has been doubted whether so serious a pro-**"*, eeeding as an amotion could take place, without a general summons of all the members, even in the case of a particular day appointed for the. general business .of the corporation, Kyd on Corp. 44-2 ; but under the circumstances of this case, a decent respect for the members who had voted for his ac *476 quittal, as well as a regard to impartial justice, required a general summons. It is unnecessary to give an opinion as to the uncertainty of this return; whether it ought not to have, in direct terms, stated a conviction on the specified charges; ^or a remova^ generally, for violation of duty would be bad, without specifying the particular instances, that the Court might judge of their sufficiency; for in every case of amotion, the return should shew precisely the cause and the proceedings, that the Court may judge of the legality of the one, and the regularity of the other. But, for the reasons above stated, this return is insufficient, and ought to be quashed. There must, therefore, be a peremptory mandamus.
Return quashed, and a peremptory mandamus awarded.